IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Jodi Monique Brannon, | ) | C/A No.: 1:11-1568-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Michael J. Astrue, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a final order pursuant to 28 U.S.C. § 636(c), Local Civil Rule 73.01(B) (D.S.C.), and the Honorable Terry L. Wooten's February 3, 2012 order referring this matter for disposition. [Entry #26]. The parties consented to the undersigned United States Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit Court of Appeals.

Plaintiff files this appeal pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the court reverses and remands the Commissioner's decision for further proceedings as set forth herein.

I.    Relevant Background

A.    Procedural History

On April 8, 2008, Plaintiff filed applications for DIB and SSI under the Social Security Act ("the Act"), 42 U.S.C. §§ 401–433, 1381–1383c.  Tr. at 135–37, 140–41.  In her applications, she alleged her disability began on October 15, 2007.  Tr. at 135, 140.  Her applications were denied initially and upon reconsideration.  Tr. at 69–70, 72–73.  On June 28, 2010, Plaintiff had a hearing before an Administrative Law Judge ("ALJ").  Tr. at 28–68 (Hr'g Tr.).  The ALJ issued an unfavorable decision on July 16, 2010, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 13–27.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–4.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on June 27, 2011.  [Entry #1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 44 years old at the time of the hearing.  Tr. at 34.  She graduated from high school.  Tr. at 161.  Her past relevant work ("PRW") was as a cashier, short order cook, and produce line worker.  Tr. at 157.  She alleges she has been unable to work since October 15, 2007.  Tr. at 135, 140.

2.    Medical History

On April 20, 2007, Plaintiff was treated at Lexington Medical Center for removal of a foreign body from her vagina.  Tr. at 265.  She stated that she was interviewing for a

job and hid a medicine bottle of someone else's urine in an attempt to pass a drug test. *Id.*

Plaintiff received inpatient rehabilitation treatment for cocaine dependence from June 18, 2007 to October 25, 2007. Tr. at 223. She was discharged successfully and referred for follow-up services. *Id.*

Plaintiff began treatment with Cassandra Patterson, M.D. at West Columbia Internal Medicine on November 21, 2007 and complained of numbness in both legs since her release from drug rehabilitation. Tr. at 232–33. She described a feeling of her legs giving out on her and stated the numbness occurred if she walked more than two blocks. Tr. at 232. She was noted to smoke one pack of cigarettes per day and to be a former crack/cocaine abuser. *Id.* Plaintiff also complained of anxiety and difficulty sleeping. Tr. at 233.

On December 7, 2007, Plaintiff followed-up with Dr. Patterson. Tr. at 230–31. Plaintiff described episodes of leg numbness with no precipitating factors every one to two days. Tr. at 230. She denied gait instability, loss of motor function, low back pain, and radiculopathy. *Id.* Dr. Patterson noted that Plaintiff's vitamin B12 level, CPK, CMP, CBC, and thyroid function studies were all within normal limits and planned to refer Plaintiff to a neurologist. *Id.*

On February 5, 2008, Plaintiff first saw Mark Lencke, M.D. at the South Carolina Neurological Clinic for muscle spasms. Tr. at 238. Dr. Lencke observed she had a spastic gait, decreased fingertip sensations, and a decreased left grip. *Id.* Prior to any

MRIs, Dr. Lencke's working diagnosis was myelopathy with differential diagnosis of multiple sclerosis ("MS"). Tr. at 239.

On February 11, 2008, an MRI of the brain demonstrated features highly suggestive of MS. Tr. at 244.

On March 5, 2008, Dr. Lencke noted that Plaintiff's brain and cervical spine MRIs showed numerous myelinating lesions. Tr. at 259. He concluded that "her signs, radiographic studies, and spinal fluid are most suggestive of clinically probable multiple sclerosis." *Id.*

On July 2, 2008, Dr. Lencke noted that Plaintiff was recently diagnosed with MS, reported good compliance with her medications, and denied significant side effects. Tr. at 296. Dr. Lencke observed an improved, though still myopathic, gait. *Id.*

In a Report of Contact dated August 11, 2008, Plaintiff reported that she used a motorized scooter for shopping, but no other assistive device. Tr. at 181. She stated that her dominant, right hand was good, but that her left hand felt almost locked up and she could not hold a glass of tea, zip jeans, or button a blouse with her left hand. *Id.*

Plaintiff underwent a comprehensive neurological examination by Vasant Garde, M.D. on September 4, 2008. Tr. at 302–06. Plaintiff reported she did not use her left hand because she was afraid of dropping things. Tr. at 302. She stated that the aches, pains, and stiffness in her extremities had improved with treatment and that she could walk about a block before resting. *Id.* She further stated that she was depressed because she was not able to do what she could do before and was taking medication for depression. Tr. at 303. She reported that she could clean her room and bathroom, cook,

and shop with the help of another person. *Id.* Dr. Garde observed poor grip strength and coordination in Plaintiff's left hand and spasticity, but no muscle weakness, in her lower extremities. Tr. at 304–05. Plaintiff dragged her left foot when she walked. Tr. at 305. Dr. Garde noted that Plaintiff's mental function was grossly intact and she appeared to have good ability to make judgment. *Id.*

On September 9, 2008, Plaintiff saw agency consultant A. Nicholas DePace, Ph.D. for a mental status evaluation. Tr. at 308–12. Plaintiff reported having a couple of friends with whom she socialized, taking the children to movies, and going to church. Tr. at 308. She denied ever being psychiatrically hospitalized. Tr. at 309. She stated that while on drugs she frequently shoplifted and sold the items she stole. *Id.* She reported that she lost custody of her children in 2005, but received them back in May 2008 following completion of a 6-month treatment program. Tr. at 310. Plaintiff scored a 25/30 on the Mini-Mental Status Examination and was able to perform serial 7s with no significant difficulties. *Id.* Dr. DePace concluded Plaintiff was functioning in the low average to average range of intelligence and appeared to meet the criteria for diagnosis of adjustment disorder with depression and chronic anxiety. *Id.* He opined that Plaintiff had the cognitive ability to perform all activities of daily living ("ADLs") and noted that there was no significant evidence that she was attempting to fabricate or embellish any type of difficulty she may have been experiencing. Tr. at 312.

A Physical Residual Functional Capacity ("RFC") Assessment completed on August 11, 2008 found Plaintiff capable of lifting and/or carrying 20 pounds occasionally and ten pounds frequently; able to stand or walk at least two hours in an eight-hour

workday; and sit about six hours in an eight-hour workday.  Tr. at 315.  The consultant found Plaintiff was restricted to frequent use of her left foot and hand; could occasionally balance, stoop, kneel, crouch, and crawl; was limited in handling and fingering; and shoud avoid concentrated exposure to extreme cold and hazards.  Tr. at 315–18.

A Psychiatric Review Technique completed by consultant Craig Horn, Ph.D. on September 23, 2008 found Plaintiff to have adjustment and polysubstance abuse disorders.  Tr. at 322–34.  Dr. Horn found Plaintiff to have one to two episodes of decompensation and moderate difficulties in maintaining social functioning and concentration, persistence, or pace.  Tr. at 332.  He noted that Plaintiff's psychiatric impairments were severe, but did not preclude simple, routine tasks away from the public.  Tr. at 334.  A Mental RFC Assessment completed the same day found Plaintiff was moderately limited in her ability to carry out detailed instructions and interact appropriately with the general public.  Tr. at 336–38.

On September 30, 2008, Dr. Lencke noted that Plaintiff was doing much better, denied any new neurologic symptoms, and had an improved, though mildly spastic, gait.  Tr. at 362.

On January 29, 2009, Dr. Lencke noted that Plaintiff had new burning dysesthesias in the upper extremities and still walked with a slightly spastic gait, but was otherwise doing quite well.  Tr. at 360.  He felt that she needed repeat imaging of the brain to evaluate for disease progression.  *Id.*

An MRI of Plaintiff's brain on February 10, 2009, found that there was no progression, but still noted areas of demyelination.  Tr. at 358.  There were multiple areas

of lesions in the brain, but it was noted that these same findings existed in the prior study on February 11, 2008. *Id.* An MRI of Plaintiff's spine showed an apparent decrease in conspicuity of the area of signal abnormality involving the upper cervical spine. Tr. at 359.

On February 17, 2009, Dr. Lencke filled out a form in which he stated that Plaintiff's disability was permanent and that she was not able to work more than 20 hours per week. Tr. at 356–57. He noted that Plaintiff was unable to do any standing, climbing stairs or ladders, kneeling, squatting, bending, stooping, pushing, or pulling. Tr. at 356. He also opined that Plaintiff could not lift or carry objects weighing more than ten pounds for more than two hours per day. *Id.*

Following an office visit on June 16, 2009, Dr. Lencke noted that Plaintiff had a little spasticity, but was otherwise doing well. Tr. at 355. He noted that her follow-up MRI scans showed a stable brain and improvement in her cervical spine. *Id.* He reported that Plaintiff's neuropathic pain had resolved on Lyrica and that she complained of being tired, but blamed that on raising three children. *Id.*

An MRI of Plaintiff's spine on April 6, 2010 showed some progression with increasing signal identified at the C2–C3 level. Tr. at 372. Plaintiff's brain MRI was unchanged. Tr. at 371.

Plaintiff saw Christine Barrett, NP at Lexington Medical Center on May 4, 2010 complaining of increased leg pain and dark areas on her skin. Tr. at 373–74. She reported that her MS seemed to be progressing very rapidly and she was barely able to get around. Tr. at 373. She denied numbness to her extremities, headache, dizziness, and

weakness. *Id.* Nurse Barrett observed decreased grip strength and some limited range of motion. Tr. at 373–74.

On May 17, 2010, Plaintiff reported significant leg pain and depressive symptoms to Dr. Lencke. Tr. at 377. She stated that her activities with her children were quite limited due to her gait spasticity and neuropathic pain. *Id.* Dr. Lencke noted that repeat MRI scans showed minimal progression of cervical cord disease and no change in her lesion burden on her brain scan. *Id.* He observed Plaintiff to have a spastic gait with poor postural reflexes. *Id.*

Dr. Lencke completed a RFC assessment of Plaintiff on June 8, 2010 in which he opined she could lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk a total of less than about two hours in an eight-hour workday; sit about six hours in an eight-hour workday; and do limited pushing and pulling for less than two hours a day. Tr. at 381. He further limited Plaintiff to never climbing or balancing; occasionally stooping, kneeling, crouching, or crawling; and no exposure to heights or extreme heat. *Id.* Dr. Lencke opined that Plaintiff did not have restrictions in sustaining mental activities and demands. Tr. at 383.

C. The Administrative Proceedings

1. The Administrative Hearing

a. Plaintiff's Testimony

At the June 29, 2010 hearing, Plaintiff testified that she lives with her two sons and her godparents. Tr. at 35. She stated that she has a driver's license and is able to drive, prepare meals, and take care of her personal needs with occasional help putting on

her clothes.  Tr. at 37–40.  She testified she does not do laundry, mop, sweep, vacuum, or wash dishes.  Tr. at 40–41.  She stated she does not need assistance going to the bathroom, but sometimes urinates on herself and does not wear protective undergarments.  Tr. at 40.

She testified that she last worked in 2007 as a housekeeper and left that job to go into drug "rehab."  Tr. at 42.  She applied for unemployment compensation, but did not receive it.  *Id.*  She testified that in 2008 she began having problems with her legs "giving out" and falling.  Tr. at 45–46.  She testified that her back always aches, she can only walk one block before sitting down and resting, can only stand about five or ten minutes before needing to sit down, and can lift less than ten pounds.  Tr. at 46, 48–49, 53.  She testified that she is no longer coordinated, cannot balance, has difficulty sleeping, and has a constant limp in her left leg.  Tr. at 47, 49.  She indicated that she takes her medications as prescribed, but they make her drowsy.  Tr. at 48.  She said she is always in pain and that pain and depression interfere when she is trying to think about something.  *Id.*  She testified she only sleeps two or three hours at night and is always tired and weak.  Tr. at 49.  Plaintiff stated hot weather makes her feel worse.  Tr. at 50.  She said that she has problems with arthritis in her left hand and does not use it, but she does not receive treatment.  Tr. at 51–52.  She testified that she had previously been addicted to crack cocaine, her younger son was also born addicted to crack cocaine, and she lost custody of her children for a period of time as a result.  Tr. at 53–56.  She confirmed that in early 2007 she attempted to use someone else's urine to pass a drug test.  Tr. at 54–55.

b.      Vocational Expert Testimony

Vocational Expert ("VE") Brea Gibran reviewed the record and testified at the hearing. Tr. at 58–66. The VE categorized Plaintiff's PRW as a fast food cashier as a light, unskilled job with an SVP of 2; as a grader in a produce line as a light, semi-skilled job with an SVP of 3; as a short-order cook as a light, semi-skilled job with an SVP of 3; and as a housekeeper as a light, unskilled job with an SVP of 2. Tr. at 60. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could only perform tasks that do not require ongoing interaction with the general public; not lift or carry over 20 pounds occasionally and ten pounds frequently; only occasionally stoop, twist, crouch, kneel, climb stairs or ramps, crawl, balance, or climb ladders, ropes, or scaffolds; do no constant, repetitive, fine dexterity or gripping with the left non-dominant hand; no constant use of the left lower extremity for foot pedals or other controls; and no required exposure to unprotected heights, dangerous machinery, uneven ground, or extremes of temperature. Tr. at 60–61. The VE testified that the hypothetical individual would be able to perform Plaintiff's PRW as a produce-line grader; however, the ALJ had not yet decided whether that job was vocationally relevant. Tr. at 61. The ALJ asked whether there were any other jobs that the hypothetical person could perform. *Id.* The VE testified to the following light occupations that matched the hypothetical: office helper (DOT 239.567-010) (35,980 jobs in South Carolina; 2,560,000 nationally); mail clerk (DOT 209.687-026) (1,500 jobs in South Carolina; 200,000 nationally); and machine tender (DOT 556.685-038) (13,360 jobs in South Carolina; 1,289,000 nationally). *Id.*

The ALJ then modified the hypothetical to an individual who could only perform tasks that do not require ongoing interaction with the general public; do only simple, routine, and repetitive tasks; not lift or carry over ten pounds occasionally and less than ten pounds frequently; not stand or walk over approximately an aggregate of two hours in an eight-hour day; only occasionally stoop, twist, balance, crouch, kneel, and climb stairs or ramps; not crawl or climb ladders, ropes, or scaffolds; do no constant, repetitive, fine dexterity or gripping with the left non-dominant hand; no constant use of the left lower extremity for foot pedals or other controls; and no required exposure to unprotected heights, dangerous machinery, uneven ground, or extremes of temperature. Tr. at 62. The VE testified to the following sedentary occupations that matched the hypothetical: machine tender (DOT 574.685-010) (8,000 jobs in South Carolina; 1,130,000 nationally); sorter (DOT 521.687-086) (600 jobs in South Carolina; 64,000 nationally); and inspector (DOT 726.684-050) (14,100 jobs in South Carolina; 1,354,000 nationally). Tr. at 62–63. The VE stated that the machine tender job would not require any standing or contact with the machine. Tr. at 65.

The ALJ presented a third hypothetical based on the Medical Source Statement from Dr. Lencke, the treating neurologist. Tr. at 63–64. The VE testified that the additional pushing and pulling restrictions would eliminate the inspector job, but the hypothetical individual would be able to do the sedentary job of a surveillance system monitor. (DOT 379.367-010) (3,200 jobs in South Carolina; 326,000 nationally). Tr. at 64.

Upon questioning by Plaintiff's counsel, the VE stated that if the hypothetical individual were drowsy to the point of not being able to consistently focus on the machine in the machine tender job, he would eliminate that job and all other jobs. Tr. at 66.

2.    The ALJ's Findings

In his July 16, 2010 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.    The claimant has not engaged in substantial gainful activity since October 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: multiple sclerosis; depression; and a history of crack cocaine and marijuana dependence, in full remission (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the following limitations: only simple, routine, repetitive tasks that do not require ongoing interaction with the public; no lifting or carrying over 10 pounds occasionally and less than 10 pounds frequently; no standing and / or walking over two hours in an eight-hour workday; no sitting over six hours in and eight-hour workday; no pushing / pulling over two hours in and eight-hour workday; no climbing; no balancing; no more than occasional stooping, kneeling, crouching, or crawling; an environment reasonably free from extremes of temperature; no exposure to hazards such as unprotected heights, dangerous machinery, or uneven grounds; no repetitive fine dexterity or gripping with the left (non-dominant) hand; and only frequent foot pedals or other controls with the left lower extremity.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on September 10, 1965 and was 42 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 13–27.

II.  Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)  The ALJ erred in his RFC determination; and

2)  The ALJ improperly assessed Plaintiff's credibility.[1]

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

---

[1] Plaintiff stated her allegations of error differently; however, based on a review of the arguments contained in her briefing, the court concludes the arguments fall within the two allegations set forth above.

A.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such

_____

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step.).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v.*

---

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

*Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be

affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

1.     The ALJ's RFC Determination is Not Supported by Substantial Evidence

Plaintiff argues the ALJ erred in determining her RFC because he misread the opinion of Dr. Lencke, which he found to be controlling, and did not adequately explain the basis for his determination.  [Entry #18 at 3–6, 19].  The Commissioner contends the ALJ's RFC finding was supported by the record as a whole and any difference between Dr. Lencke's opinion and the RFC determination was harmless error.  [Entry #19 at 6–8, 10].

Dr. Lencke opined on June 8, 2010 that Plaintiff could lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk a total of less than about two hours in an eight-hour workday; sit about six hours in an eight-hour workday; and do limited pushing and pulling for less than two hours a day.  Tr. at 381.  He limited Plaintiff to never climbing or balancing; occasionally stooping, kneeling, crouching, or crawling; and no exposure to heights or extreme heat.  *Id.*  Dr. Lencke further opined that Plaintiff did not have restrictions in sustaining mental activities and demands.  Tr. at 383.

The ALJ stated the following with regard to Dr. Lencke's opinion:

As for the opinion evidence, the only medical opinion in the record from one of the claimant's treating sources is a medical source statement from Dr. Lencke, as described above (Exhibit 21F).  Dr. Lencke's opinion is supported by the overall medical record including objective tests such as magnetic resonance imaging tests and computed topography scans (Exhibits 4F, 17F, and 18F).  As such, I find his opinion to be of controlling

weight and have used it as the basis of the above-found residual functional capacity.

Tr. at 24.  In describing Dr. Lencke's opinion, however, the ALJ erred with regard to the opinion on Plaintiff's ability to stand and walk during the workday.  Whereas Dr. Lencke found that Plaintiff could stand and/or walk a total of "less than about 2 hrs. (per 8 hr. day)," the ALJ summarized the opinion as "the claimant could only stand / walk for a total of two hours in an eight-hour workday."  Tr. at 21, 381.  The ALJ's RFC determination limited Plaintiff to "no standing and / or walking over two hours in an eight-hour workday."  Tr. at 19.  The parties disagree on whether the discrepancy between Dr. Lencke's opinion and the RFC finding is reversible error given that the ALJ concluded Dr. Lencke's opinion was controlling.

Of greater significance to the court is Dr. Lencke's record dated February 17, 2009 in which he opined Plaintiff could not work more than 20 hours in a week.  Tr. at 356–57. The ALJ cited this record, identified as Exhibit 17F, as a basis for finding Dr. Lencke's opinion controlling, but did not discuss how or whether he considered the opinion regarding how many hours Plaintiff was able to work.  Plaintiff referenced this record only in her reply brief [Entry #21 at 1] and, likely because it was not raised in the original brief, the Commissioner did not address it in his response.

Pursuant to SSR 96-8p, an RFC assessment must include a discussion of the claimant's ability to work on a "regular and continuing basis," which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996).  To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical

18

history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. SSR 96–8p specifically states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 34,478.

In light of SSR 96-8p, the ALJ's RFC finding implicitly contained a finding that she was able to work an eight-hour day. *See Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). The ALJ did not address the contradictory opinion of Dr. Lencke that Plaintiff could only work 20 hours per week. On the contrary, the ALJ found Dr. Lencke's opinions controlling. Tr. at 24. Because it appears the ALJ missed Dr. Lencke's opinion regarding the length of time Plaintiff could work, the court remands this case for specific consideration of this opinion. *Smith v. Astrue*, No. 3:10–66–HMH–JRM, 2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011) ("Whether to reverse and remand for an award of benefits or remand for a new hearing rests within the sound discretion of the district court.") (citing *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C. 1987)). On remand, the ALJ should ensure that his RFC determination and hypothetical to the VE are consistent with Dr. Lencke's June 8, 2010 opinion regarding Plaintiff's ability to stand/walk during a workday.

### 2. The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff also argues that the ALJ improperly assessed her credibility. [Entry #18 at 10–18]. She specifically argues that the ALJ erred in finding her history of drug abuse and related activities significantly damaged her credibility and in finding that her

unsuccessful application for unemployment benefits automatically barred her application for disability benefits. *Id.* at 10–13. The Commissioner contends that the ALJ's credibility determination is supported by substantial evidence. [Entry #19 at 12].

Prior to considering a claimant's subjective complaints, an ALJ must find a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged. *See* 20 C.F.R. § 404.1529; 20 C.F.R. § 416.929; SSR 96-7p; *Craig*, 76 F.3d at 591–96 (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Id.* at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and SSR 96-7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, ¶ 4.

If an ALJ rejects a claimant's testimony about her pain or physical condition, he must explain the bases for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989). "The determination or decision must contain specific

reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, ¶ 5. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms and the extent to which they limit an individual's ability to perform basic work activities, adjudicators are to consider all record evidence, which can include the following: the objective medical evidence; the individual's ADLs; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

Here, after setting forth the applicable regulations, the ALJ considered Plaintiff's subjective claims under the required two-step process. *See Craig,* 76 F.3d at 591–96. The ALJ found Plaintiff's impairments could reasonably be expected to cause the symptoms she alleged, but determined that Plaintiff's testimony "concerning the intensity, persistence and limiting effects" of her symptoms was "not credible to the extent" the testimony was inconsistent with the ALJ's determination of her RFC. Tr. at 22.

The ALJ found Plaintiff less than fully credible because her ADLs were not limited to the extent one would expect given her complaint of disability symptoms and limitations; she continued to maintain healthy relationships and an ability to engage with the public; and Dr. Lencke and the agency examiners found she had no difficulties with attention or concentration. Tr. at 22–23. He noted that Plaintiff's testimony showed that she had applied for unemployment benefits, which required applicants to state that they are willing, ready, and able to work. Tr. at 23. With regard to Plaintiff's alleged mental impairments, the ALJ noted Plaintiff had not received treatment from any mental health specialist other than when she was in drug rehabilitation. Tr. at 24. With regard to Plaintiff's MS, the ALJ found that treatment had been generally successful in controlling her symptoms. *Id.* He noted that Dr. Lencke's medical source statement found no limitations in Plaintiff's use of her hands despite her allegations of pain and decreased grip. *Id.* The ALJ further found that Plaintiff's history of drug abuse, shoplifting, and attempt to defraud a drug test significantly damaged her credibility. Tr. at 23. Lastly, the ALJ noted Plaintiff was able to sit through the nearly hour-long hearing without any noticeable problems other than complaints of leg stiffness after 20–30 minutes. Tr. at 24. The ALJ also observed the Plaintiff rapidly opening and closing the fingers on her left hand despite her contention that she could not use her left hand. *Id.*

The court finds no error in the ALJ's credibility assessment of Plaintiff. As he is required to do by SSR 96-7p, the ALJ considered all record evidence in assessing Plaintiff's credibility and specified a multitude of reasons for finding her less than credible.

The court is not persuaded by Plaintiff's argument that the ALJ erred in finding that her application for unemployment benefits "automatically bar[red] her application for Social Security disability benefits." [Entry #18 at 10]. This argument is a mischaracterization of the ALJ's decision. The ALJ noted Plaintiff's application for unemployment benefits as one of many factors impacting his credibility determination and at no point stated that the application barred Plaintiff's application for disability benefits. Tr. at 23. The propriety of the ALJ's actions is underscored by the memoranda Plaintiff attaches as exhibits to her brief. In the memoranda, Chief Social Security ALJ, Frank Cristaudo set forth the SSA's policy on how the receipt of unemployment benefits impacts a disability determination. In the first memorandum, dated November 15, 2006, Judge Cristaudo wrote: "This is a reminder that the receipt of unemployment insurance benefits does not preclude the receipt of Social Security disability benefits. The receipt of unemployment benefits is only one of many factors that must be considered in determining whether the claimant is disabled. *See* 20 CFR 404.1512(b) and 416.912(b)." [Entry #18-2 at 1, Frank A. Cristaudo, Memorandum re: Receipt of Unemployment Insurance Benefits by Claimant Applying for Disability Benefits—INFORMATION, NOSSCR Social Security Forum, Volume 29, No. 11 (November 15, 2006)]. The judge went on to state that "application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence." *Id.* In the second memorandum, Judge Cristaudo re-emphasized the position of the Social Security Administration that "individuals need not choose" between applying for the two types of benefits, and that "ALJs should look at the totality of circumstances in determining the

significance of the application for unemployment benefits and related efforts to obtain employment." [Entry #18-3 at 1, Frank A. Cristaudo, Memorandum re: Receipt of Unemployment Insurance Benefits by Claimant Applying for Disability Benefits— REMINDER, NOSSCR Social Security Forum, Volume 32, No. 8 (August 9, 2010)]. The ALJ complied with these memoranda and properly considered Plaintiff's application for unemployment benefits in conjunction with all of the medical and other evidence of record.

The court finds the ALJ's articulated reasons for discounting Plaintiff's claims support his credibility determination. Because this case is being remanded on other grounds, however, the ALJ is instructed to emphasize the factors set forth in SSR 96-7p in assessing Plaintiff's credibility. The ALJ is also instructed to address Plaintiff's claims regarding the side effects of her medication on remand and to ask the VE whether she is testifying pursuant to the Dictionary of Occupational Titles or her own experience.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned reverses and remands this matter for further administrative proceedings pursuant to 42 U.S.C. § 405(g).

IT IS SO ORDERED.

*Shiva V. Hodges*

September 4, 2012                        Shiva V. Hodges
Columbia, South Carolina              United States Magistrate Judge